**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **KIM M. MOORE,**  )<br>                 ) <br>            Plaintiff,  ) <br>                 ) <br>      v.          ) <br>                 ) <br>**MICHAEL J. ASTRUE,**  ) <br>**Commissioner of the Social**  ) <br>**Security Administration,**  ) <br>                 ) <br>            Defendant.  ) <br>_____) | **Case No. EDCV06-910 AJW**<br><br>**MEMORANDUM OF DECISION** |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff, a 48 year-old woman with a high school education and trade school experience, filed an application for benefits on March 2, 2004 alleging disability since October 13, 2003. [JS 2; Administrative Record ("AR") 65-67, 73]. In a written decision dated April 10, 2006, Administrative Law Judge Lowell Fortune (the "ALJ") found that plaintiff had severe impairments consisting of discogenic and degenerative spinal disorder, obesity, affective disorder, and alcohol dependence disorder in full remission.

1   [AR 21]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform
2   sedentary work that permits her to change positions every 20 minutes; involves no climbing, crawling,
3   kneeling, or squatting; requires only occasional balancing, stooping, or crouching; does not require exposure
4   to dangerous or fast-moving machinery or unprotected heights or concentrate exposure to temperature
5   extremes; and does not require working among crowds or in a confined, cramped, or closed workspace. [AR
6   21]. The ALJ concluded that plaintiff's RFC precludes her from performing her past relevant work, but that
7   she could perform alternate work available in significant numbers in the national economy. [AR 21-22]. The
8   Appeals Council denied plaintiff's request for review of that decision. [JS 2; AR 5-7].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Appeals Council's consideration of mental health evaluations**

Plaintiff contends that the Appeals Council erred in failing to consider evidence that plaintiff submitted in support of her request for review of the ALJ's decision, namely a June 20, 2005 psychiatric evaluation by S. Thacker, M.D. of the San Bernardino County Department of Behavioral Health ("County Behavioral Health") [AR 199-201] and a May 20, 2005 clinical assessment of plaintiff by Davis Powell, a marriage and family therapist at County Behavioral Health. [AR 203-206].

The Commissioner's regulations state:

> If new and material evidence is submitted to the Appeal, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.970, 416.1470.

There is no merit to plaintiff's argument that the Appeals Council ignored the evaluations by Dr. Thacker and Davis Powell and erroneously failed to provide specific and legitimate reasons for doing so. The Appeals Council denied plaintiff's request for review in a written "Notice of Action" ("Notice") dated July 6, 2006. [AR 5-8]. The Notice states that the Appeals Council "considered the additional evidence listed on the enclosed Order of Appeals Council." [AR 5]. That order directed that the records plaintiff submitted from County Behavioral Health, which includes the reports of Dr. Thacker and Davis Powell, be made part of the record. [AR 8]. Plaintiff has not pointed to any evidence rebutting the evidence in the record indicating that the Appeals Council did consider the records from County Behavioral Health.

Where, as here, new evidence is presented that relates to the period on or before the date of the ALJ's decision, the Appeals Council may deny review unless it concludes that the ALJ's decision is "contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b). The Commissioner's regulations do not require the Appeals Council to make findings explaining its evaluation of the evidence unless it reviews the ALJ's decision and issues its own decision. When the Appeals Council denies review, as it did in this case, the ALJ's decision stands as the final decision of the Commissioner, and only that decision (not the Appeals Council's action in denying review) is subject to judicial review. See 20 C.F.R. §§ 404.967, 404.970, 404.979, 404.981; see generally 42 U.S.C. § 405(g).[1] Thus, there is no

---

[1] A federal court reviewing the ALJ's decision considers all of the evidence in the record, including any evidence made a part of the record after submission to the Appeals Council. See Ramirez v. Shalala, 8 F.3d 1449, 1451-1452 (9th Cir. 1993). That does not mean, however, that the

merit to plaintiff's contention that the Appeals Council erred in failing to articulate "specific and legitimate reasons" for concluding that the additional evidence did not justify granting review.

Moreover, plaintiff has not argued that the evaluations by Dr. Thacker and Davis Powell show that *the ALJ* erred, or that the *ALJ's decision* lacks substantial support in the record as a whole, with or without their evaluations.[2] In short, plaintiff has made no attempt whatsoever to show how that additional evidence warrants reversal of the denial of benefits. Plaintiff's failure to challenge the sufficiency of the evidence supporting the ALJ's decision or the ALJ's compliance with the applicable legal standards (except as to his credibility finding) constitutes a waiver of those issues because "[a] reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision." Bergfeld v. Barnhart, 361 F.Supp.2d 1102, 1110 (D. Ariz. 2005)(citing Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.2001)); see Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1007 (9th Cir. 2006)(declining to consider an issue that the plaintiff-appellant raised on appeal to the Ninth Circuit but had waived by failing to raise it before the district court). Accordingly, those issues will not be considered (except in the context of the ALJ's credibility finding).[3]

**Credibility finding**

---

court has jurisdiction to review the Appeal Council's denial of review.

[2] Although the first two issues raised by plaintiff concern the Appeals Council's handling of the additional evidence, the third issue she raises is the ALJ's allegedly defective credibility finding. Therefore, it is clear that plaintiff understands the distinction between the Appeals Council's actions and the ALJ's decision and know how to challenge the ALJ's decision directly when she believes there are grounds to do so.

[3] Without abrogating plaintiff's waiver, it is worth noting that the reports of Dr. Thacker and Davis Powell do not appear to provide any basis for changing the ALJ's decision, which was based on substantial evidence consisting of plaintiff's treatment records and the reports of the Commissioner's examining and non-examining physicians. [See AR 17-19]. The reports of Dr. Thacker and Davis Powell (1) do not include a medical opinion that plaintiff is disabled or has work-related functional restrictions, (2) reflect mostly plaintiff's self-reported history and subjective complaints, (3) lack detailed clinical findings showing that plaintiff is disabled or had greater work-related functional restrictions than the ALJ described, (4) were each based on a single, initial examination, (5) were both prepared during a condensed time span (May and June 2005), and (5) in the case of Davis Powell's assessment, was prepared by a therapist who is not an "acceptable medical source" and therefore whose opinion is entitled to limited weight, at best. See 20 C.F.R. §§ 404.1527(d), 416.927(d)(describing factors used to weigh medical opinions); 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d)(defining "acceptable medical source").

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ did not improperly discredit plaintiff's subjective complaints based solely on the absence of corroborating objective evidence, as plaintiff asserts. To begin with, the ALJ said that he found plaintiff's testimony "partially credible." [AR 18]. Plaintiff argues that it is impossible to discern which portions of her testimony the ALJ credited and which portions he discredited, but that is not a fair reading of the ALJ's decision. It can reasonably be inferred that the ALJ credited significant aspects of plaintiff's testimony while rejecting her subjective complaints that her physical and mental symptoms were so severe that she could not work. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (stating that a reviewing court may draw specific and legitimate inferences from the ALJ's opinion "if those inferences are there to be drawn").

For example, plaintiff testified that she had not been able to work for the two years before the hearing because she was not able "to sit or stand for any long periods of time" without back and leg pain, and she also said that she felt that taking pain medication impaired her ability to perform her last job (as a medical assistant in a surgeon's office). [AR 214-217]. Plaintiff said that she could sit for about 5 minutes without pain medication and for 15 to 20 minutes with pain medication before needing to change positions, that she could stand more easily than she could sit, and that she could stand for about 15 minutes at a time. [AR 214]. She also testified that she could lift about ten pounds maximum. Asked about her emotional problems, plaintiff said that she had "occasional depression" and "anxiety every once in awhile," which she described as "anxiety attacks in crowds of people" or "panicky" feelings, "like let me out right now, or else." [AR 220-221]. The ALJ obviously gave weight to those portions of plaintiff's testimony because he found that she was limited to sedentary work which allowed her to change positions every 20 minutes or so, did not require exposure to dangerous machinery or unprotected heights, did not involve working among crowds, and did not require her to work in a confined, cramped, or closed space. [AR 21].

The ALJ, however, rejected plaintiff's testimony that she had to lie down for 1 to 2 hours after standing for 20 minutes and spent six or more hours a day lying down. [See AR 214-215]. He noted that her allegations of disabling pain and emotional symptoms were inconsistent with the findings and opinions of the Commissioner's consultative physicians, Dr. Enriquez and Dr. Fontana. [AR 17-18; see AR 133-137, 138-142]. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th

Cir. 2005).

In addition, the ALJ permissibly contrasted the allegedly disabling severity of plaintiff's subjective symptoms with her relatively conservative treatment history. Plaintiff testified that her back was injured when her husband fell on her during an incident of domestic violence in March 2003. [AR 219]. She did not receive treatment until August 2003, when she consulted a chiropractor, Dr. Stine. In a February 27, 2004 letter, Dr. Stine stated that plaintiff had diagnoses of a lumbar compression fracture, lumbar strain/sprain with associated myofascitis, cervical strain/sprain, and severe headaches. [AR 130]. Plaintiff was treated with physical therapy and spinal manipulation three times a week. Plaintiff "responded to treatment but slower than expected." [AR 130].

The record does not indicate that plaintiff was prescribed any medication until February 2004, almost a year after her back injury, when she saw Dr. Ashok Melvani. Plaintiff reported that he prescribed medication, including Vicodin for pain, Xanax for anxiety, and Prozac for depression, but there are no treatment reports from Dr. Melvani. [AR 76].

Plaintiff twisted her ankle while walking in October 2004 and thought she had sprained it, but subsequently discovered she had broken her ankle. Her doctors told her that her fracture was related to her back problems. Her ankle was placed in a cast, which was removed in November 2004. Plaintiff did not testify about any residual ankle problems. [AR 109, 218].

Plaintiff saw Dr. Eric Hansen initially in May 2004 for a well-woman examination. [AR 102, 170-174]. He noted her complaints of chronic back pain, and he detected tenderness to palpation of the spine. [AR 173-174]. An x-ray showed a healed wedge compression fracture at L1 with grossly normal lumbar vertebral alignment. [AR 177]. Dr. Hansen prescribed Vicodin and Motrin for pain, Lasix for high blood pressure, Zyrtec for allergies, Prilosec for acid reflux, and Prozac for depression. [AR 104]. By December 2004, plaintiff reported that Dr. Hansen was prescribing Vicodin and Ultram for pain and Lasix for high blood pressure. [AR 111]. In both reports plaintiff stated that she had no side effects from her medications. [AR 104, 111].

In a medication report filed in October 2005, plaintiff reported prescriptions of Catapress for menopause and high blood pressure, Pepcid for acid reflux, Singular for allergies, Vicodin and Motrin for pain, Tramadol for restless leg syndrome, Donnatal for stomach cramping, and Prozac and Risperdol for

depression and post traumatic stress disorder. [AR 117-118]. Except for the Prozac, which was prescribed in August 2005 by Dr. Thacker, those medications were prescribed in May and June 2005 by a Dr. Wilson at High Desert Community Care. [AR 117-119]. By the time of the hearing in December 2005, the prescriptions for Prozac, Vicodin and Tramodol had been discontinued, and a prescription for Darvocet had been added (by whom is not clear). [AR 125].

During the December 2005 hearing, plaintiff testified that on a typical day she took no more than two pain pills, at night, because she did not "want to be addicted to them . . . ." [AR 215]. She testified that had been offered surgery for her back, but that it had been put off because of problems with her bone density. [AR 223]. She did not use a brace for support. When asked what she did when her back hurt, she said, "I lay down. I take pain pills, when I have them." [AR 223].

The ALJ rationally concluded that plaintiff's treatment history was consistent with the restricted functional capacity he described but undermined the credibility of her complaints of incapacitating pain and other symptoms. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (holding that the ALJ provided "specific, cogent" reasons for discrediting the claimant's subjective complaints where the claimant waited nine months after he stopped working before seeking medical treatment); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that the ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ properly discounted subjective back complaints in view of a lengthy gap in treatment and the treating physician's reliance on conservative treatment).[4]

---

[4] Although the ALJ did not comment on inconsistencies in plaintiff's testimony, they were present. For example, on questioning by her lawyer, plaintiff testified that she spent "most" of the day, "[p]robably about six hours," lying down due to pain, and that after 15 minutes or so of standing, she had to lie down for about 2 hours. [AR 214-215]. She testified that she seldom left her parents' house, where she lived with her mother and father, and did little in the way of activities or chores. [AR 223-224]. When the ALJ examined her, however, plaintiff acknowledged that she cleaned her room, cleaned her bathroom, did her laundry, picked up the house sometimes for her mother (who cared for plaintiff's ill father), attended some vocational rehabilitation training earlier in the year, and babysat her granddaughters, ages 3 and 5, four or five hours a week (which entailed sometimes picking the older child up from school, driving to her son's house or driving the children to her parents' house, occasionally making them lunch or taking them out for fast food, and taking them to the library until plaintiff's mother "couldn't deal with [plaintiff's] attacks any more"). [AR

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects the application of the proper legal standards. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: May 7, 2007

/ s /
_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

224-231]. See Johnson v. Shalala, 60 F.3d at 1434 (holding that the ALJ permissibly rejected the alleged severity of the claimant's back pain due, in part, to inconsistencies in the claimant's testimony).